## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

LEWIS SHIPMAN,

               Plaintiff,

    v.

KILOLO KIZAKAZI,

               Defendant.

CIVIL ACTION NO. 3:22-CV-00636

(MEHALCHICK, M.J.)

### MEMORANDUM

Plaintiff Lewis Shipman ("Shipman") brings this action pursuant to the Social Security Act, 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3), for judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying his application for disability insurance benefits under Title II of the Society Security Act. (Doc. 1). On May 31, 2022, the parties consented to proceed before the undersigned United States Magistrate Judge pursuant to Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). (Doc. 11). For the following reasons, the Commissioner's decision will be **VACATED.**

### I.   BACKGROUND AND PROCEDURAL HISTORY

On March 28, 2017, Shipman protectively filed applications for Title II disability insurance benefits, claiming disability beginning January 19, 2017, due to hypothyroidism, neuropathy, insomnia, high blood pressure, depression, broken rib on left side from work injury, and chronic pain. (Doc. 13-3, at 19). The Social Security Administration ("SSA") initially denied his application on August 14, 2017. (Doc. 13-3, at 19). On October 6, 2017, Shipman filed a request for a hearing, which Administrative Law Judge ("ALJ") Gerald W. Langan held on May 16, 2019. (Doc. 13-3, at 19). In a written opinion dated June 3, 2019, the ALJ determined that Shipman "has not been under a disability, as defined in the Social

Security Act from January 19, 2017, through the date of this decision," and therefore not entitled to benefits. (Doc. 13-3, at 31).

On June 17, 2019, Shipman requested review by the Appeals Council. (Doc. 13-4, at 84). On June 16, 2020, the Appeals Council vacated the ALJ's decision, finding the ALJ's hypothetical question posed to the vocational expert did not specify a lifting and carrying limitation beyond that for sedentary work and that the ALJ applied the incorrect Medical-Vocational Rule at step 5. (Doc. 13-3, at 37). The Appeals Council remanded the case for resolution of the following issues:

- Obtain additional evidence concerning [Shipman]'s physical and mental in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 404.1512). The additional evidence may include, if warranted and available, consultative examinations with psychological testing and medical source opinions about what [Shipman] can still do despite the impairments.

- Give further consideration to [Shipman]'s maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 404.1545 and Social Security Ruling 96-8p).

- Further, if necessary, obtain evidence from a medical expert related to the nature and severity of and function limitations resulting from [Shipman]'s impairment (20 CFR 404.1513a(b)(2)).

- Obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on [Shipman]'s occupational base (Social Security Ruling 83-14). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of

Occupations (Social Security Ruling 00-4p).

(Doc. 13-3, at 38).

On September 18, 2020, a remand hearing was held before ALJ Gerald W. Langan. (Doc. 13-2, at 44). In a written opinion dated February 22, 2021, the ALJ determined that Shipman "has not been under a disability, as defined in the Social Security Act from January 19, 2017, through the date of this decision," and therefore not entitled to benefits. (Doc. 13-2, at 37). On March 10, 2022, the Appeal Council denied Shipman's request for review. (Doc. 13-2, at 9).

On April 30, 2022, Shipman filed the instant complaint. (Doc. 1). The Commissioner responded on July 14, 2022, providing an answer and the requisite transcripts from Shipman's disability proceedings. (Doc. 12; Doc. 13). The parties then filed their respective briefs, with Shipman raising two bases warrant reversal or remand. (Doc. 14; Doc. 15; Doc. 16)

II.   **STANDARDS OF REVIEW**

To receive benefits under Title II of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1509. To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).[1] Additionally,

---

[1] A "physical or mental impairment" is defined as an impairment resulting from

to be eligible to receive Title II benefits, a claimant must be insured for disability insurance benefits. 42 U.S.C. § 423(a)(1)(a); 20 C.F.R. § 404.131. To establish an entitlement to disability insurance benefits under Title II, the claimant must establish that he or she suffered from a disability on or before the date on which they are last insured.

## A. ADMINISTRATIVE REVIEW

The "Social Security Administration, working through ALJs, decides whether a claimant is disabled by following a now familiar five-step analysis." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 200–01 (3d Cir. 2019). The "burden of proof is on the claimant at all steps except step five, where the burden is on the Commissioner of Social Security." *Hess*, 931 F.3d at 201; *see* 20 C.F.R. § 404.1512(a)(1). Thus, if the claimant establishes an inability to do past relevant work at step four, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform consistent with his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1512(a)(1).

## B. JUDICIAL REVIEW

The Court's review of a determination denying an application for Title II benefits is limited "to considering whether the factual findings are supported by substantial evidence." *Katz v. Comm'r Soc. Sec.*, No. 19-1268, 2019 WL 6998150, at *1 (3d Cir. Dec. 20, 2019). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a

---

"anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). The quantum of proof is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial if the ALJ ignores countervailing evidence or fails to resolve a conflict created by such evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

The question before the Court, therefore, is not whether Shipman is disabled, but whether the Commissioner's determination that Shipman is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). If "the ALJ's findings of fact . . . are supported by substantial evidence in the record," the Court is bound by those findings. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

III.   **THE ALJ'S DECISION**

In his written decision, the ALJ determined that Shipman "has not been under a disability, as defined in the Social Security Act, from January 19, 2017, through the date of this decision." (Doc. 13-2, at 37). The ALJ reached this conclusion after proceeding through the five-step sequential analysis required by the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). At the outset, the ALJ determined that Shipman meets the insured status requirements of the Social Security Act through December 31, 2021. (Doc. 13-2, at 27).

A.   STEP ONE

At step one of the five-step analysis, the ALJ must determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(a)(4)(i). If a claimant is engaging in SGA, the claimant is not disabled, regardless of age, education, or work experience. SGA is defined as work activity requiring significant physical or mental activity and resulting in pay or profit. 20 C.F.R. § 404.1520(b). In making this determination, the ALJ must consider only the earnings of the claimant. 20 C.F.R. § 404.1574. Here, the ALJ determined that Shipman "has not engaged in substantial gainful activity since January 19, 2017, the alleged onset date." (Doc. 13-2, at 27). Thus, the ALJ's analysis proceeded to step two.

B.   STEP TWO

At step two, the ALJ must determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the 12-month duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ determines that the claimant does not have an impairment or combination of impairments that significantly limit his or her "physical or mental ability to do basic work activities," the ALJ will find that the

claimant does not have a severe impairment and is therefore not disabled. 20 C.F.R. § 404.1520(c). If a claimant establishes a severe impairment or combination of impairments, the ALJ analysis continues to the third step. Here, the ALJ concluded that Shipman had the following medically determinable severe impairments: "neuropathy and depression." (Doc. 13-2, at 28). In addition, the ALJ determined that Shipman had the following medically determinable non-severe impairments: hyperthyroidism, insomnia, high blood pressure, and obesity. (Doc. 13-2, at 28). The ALJ further determined that Shipman's chronic pain is not a medically determinable impairment due to a lack of objective evidence. (Doc. 13-2, at 28-29).

## C.   STEP THREE

At step three, the ALJ must determine whether an impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in the version of 20 C.F.R. Part 404, Subpt. P, App. 1 that was in effect on the date of the ALJ's decision. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, 404.1526. The sections in this appendix are commonly referred to as "listings." If the ALJ determines that the claimant's impairments meet these listings, then the claimant is considered disabled. 20 C.F.R. § 404.1520(d). Otherwise, the ALJ must proceed to the fourth step of the analysis. 20 C.F.R. § 404.1520(d). Here, the ALJ determined that none of Shipman's impairments, considered individually or in combination, meet or equal the severity of a listed impairment. (Doc. 13-2, at 29). The ALJ considered Listings 11.14 (Peripheral neuropathy) and 12.04 (Depressive, bipolar, and related disorders). (Doc. 13-2, at 29).

## D.   RESIDUAL FUNCTIONAL CAPACITY

Between steps three and four, the ALJ determines the claimant's residual functional capacity ("RFC"), crafted upon consideration of the evidence presented. At this intermediate

step, the ALJ considers "all [the claimant's] symptoms . . . and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). Here, Shipman alleged that her impairments affect his ability to sleep, handle his personal care, prepare his own meals, perform housework, lift, squat, bend, stand, walk, sit, kneel, climb stairs, remember, complete tasks, concentrate, understand, follow instructions, use his hands, get along with others, handle stress, and handle changes in routine. (Doc. 13-2, at 31). After examining his statements and the medical evidence, the ALJ found that while Shipman's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Shipman's statements about the intensity, persistence, and limited effects of the symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Doc. 13-2, at 32). The ALJ went on to detail Shipman's medical records and treatment history. (Doc. 13-2, at 32-35).

Considering all evidence in the record, the ALJ concluded that Shipman has the RFC "to perform light work as defined in 20 CFR 404.1567(b)," subject to the following limitations:

> [Shipman] must avoid unprotected heights. [Shipman] can occasionally climb. [Shipman] can tolerate occasional exposure to extreme cold temperatures, wetness, and vibration. [Shipman] is capable of no more than occasional use of the bilateral lower extremities for the operation of foot controls and pedals. [Shipman] is able to understand, retain, and carry out simple instructions with few workplace changes. [Shipman] is limited to occasional decision-making. [Shipman] should avoid fast production-rate pace work. [Shipman] should be afforded the opportunity to alternate between sitting and standing every 30 minutes.

> (Doc. 13-2, at 31).

E.   STEP FOUR

Having assessed a claimant's RFC, step four requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). A finding that the claimant can still perform past relevant work requires a determination that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). Past relevant work is defined as work that the claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 404.1560(b). "If the claimant can perform his [or her] past relevant work despite his [or her] limitations, he [or she] is not disabled." *Hess*, 931 F.3d at 202 (citing 20 C.F.R. § 404.1520(a)(4)(iv)). Here, the ALJ found that Shipman is unable to perform any past relevant work. (Doc. 13-2, at 35). The ALJ noted that Shipman had past relevant work as a diesel mechanic helper, welder helper, construction work, industrial worker, and construction worker. (Doc. 13-2, at 35). Thus, the ALJ proceeded to step five of the sequential analysis.

F.   STEP FIVE

At step five of the sequential analysis process, the ALJ considers the claimant's age, education, and work experience to see if a claimant can make the adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(v). These factors are not considered when evaluating a claimant's ability to perform past relevant work. 20 C.F.R. § 404.1560(b)(3). If a claimant can adjust to other work, he or she will not be considered disabled. 20 C.F.R. § 404.1520(a)(4)(v). Here, the ALJ made vocational determinations that Shipman was 46 years old on the date last insured, which is defined as a younger individual age 18-49, but noted that Shipman subsequently changed age category to closely approaching advanced age. (Doc. 13-2, at 35-36); *see* 20 C.F.R. § 404.1563. The ALJ also noted that Shipman has a limited education as

considered in 20 C.F.R. § 404.1564. (Doc. 13-2, at 36). The ALJ determined that upon consideration of these factors, Shipman's RFC, and the testimony of a vocational expert, "there are jobs that exist in significant numbers in the national economy that [Shipman] can perform." (Doc. 13-2, at 36); *see* 20 C.F.R. §§ 404.1569, 404.1569(a). The ALJ specifically identified occupations of (1) garment sorter; (2) information clerk; (3) ticket sales, which are occupations with open positions ranging from 100,000 to 3,000,000 nationally. (Doc. 13-2, at 36). Accordingly, the ALJ determined that Shipman has not been under a disability during the relevant period and denied his application for benefits. (Doc. 13-2, at 37).

## IV. DISCUSSION

On appeal, Shipman advances two arguments in favor of remand. (Doc. 14, at 7-19). First, Shipman avers that the law of the case doctrine compels remand because the ALJ failed to provide an explanation as to why Shipman would be limited to sedentary work at the time of the first hearing, but light work as of the second hearing. (Doc. 14, at 7). Second, Shipman argues that the ALJ erroneously failed to include the limitation to one- and two-step tasks within the RFC assessment and failed to discuss or explain his basis for failing to include the limitation. (Doc. 14, at 12). In response, the Commissioner maintains that the "law of the case" doctrine does not apply to the ALJ's February 2021 decision, and the RFC assessment fully accounted for Shipman's mental health limitations and is supported by substantial evidence. (Doc. 15, at 11-23).

### A. THE ALJ'S FAILURE TO INCLUDE THE LIMITATION TO ONE- OR TWO-STEP TASKS IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE.

Shipman argues that the ALJ's RFC assessment, hypothetical question(s) to the vocational expert, and step five findings "cannot be supported by substantial evidence because

the ALJ failed to include a limitation to one- and two-step tasks within the residual functional capacity assessment where such a limitation was uncontroverted." (Doc. 14, at 12). Specifically, Shipman argues that the medical opinions by the State Agency consulting psychologist, Timothy Ostrich, Psy.D. ("Dr. Ostrich"), and the consultative examiner, Jennifer Betts, Psy.D. ("Dr. Betts"), provide that Shipman would be limited in the ability to carry out detailed instructions. (Doc. 14, at 13-14). Shipman maintains that the ALJ did not discuss the fact that the opinions contain a limitation to "one- and two-step tasks," or explain why such a limitation should not be included within the RFC assessment, even though Dr. Ostrich's opinion was found to be supported by and consistent with the medical evidence of record. (Doc. 14, at 14). Lastly, Shipman argues that this error is not harmless because "the distinction between 'simple' and 'one and two step' tasks could potentially impact a vocational expert's testimony and the ALJ's ultimate conclusion in this case," and remand is necessary to determine if Shipman would still be able to perform one of the occupations cited by the ALJ in support of his conclusion. (Doc. 14, at 18).

In opposition, the Commissioner maintains that substantial evidence supports the ALJ's evaluation of Dr. Betts' opinion and Dr. Ostrich's prior administrative medical finding. (Doc. 15, at 17-21). The Commissioner argues that the ALJ considered Dr. Ostrich's and Dr. Betts' prior administrative findings in accordance with the applicable regulatory framework and crafted an RFC that "reasonably accounted for Plaintiff's limitations." (Doc. 15, at 16). Citing cases from both the Middle and Eastern Districts of Pennsylvania, the Commissioner further avers that the ALJ was not required to incorporate every limitation made by Dr. Ostrich into the RFC when he found the opinion as a whole persuasive. (Doc. 15, at 18).

Additionally, the Commissioner argues that the ALJ provided insight into why additional limitations were not incorporated in the RFC when he evaluated Dr. Bett's opinion as only partially persuasive, allowing "a subsequent reviewer to trace his reasoning and permits for meaningful judicial review." (Doc. 15, at 20). The Commissioner further avers that the ALJ accounted for all of Shipman's record-established limitations in the RFC assessment and adopted the vocational expert's response to the hypothetical question that contained such record-established limitations. (Doc. 15, at 22-23).

In reply, Shipman avers that the Commissioner's argument that the ALJ followed the new regulatory framework in evaluating medical opinions must be rejected, as the 2017 regulatory changes did not change the ALJ's articulation requirements. (Doc. 16, at 7-8). Further, Shipman states that the Commissioner's argument that the ALJ need not adopt every limitation from a medical opinion fails because the ALJ does not provide any explanation as to why he adopted these opinions in their entirety except for the limitation regarding one to two-step step tasks. (Doc. 16, at 8). In his supporting brief and reply, Shipman offers several arguments as to why the ALJ's error—failing to incorporate a limitation to one- and two-step tasks requires remand in this case. (Doc. 14; Doc. 16).

Assessing a claimant's RFC falls within the purview of the ALJ. 20 C.F.R. § 404.1546(c); SSR 96-8p, 1996 WL 374184 (S.S.A. July 2, 1996). "'[RFC] is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 (3d Cir. 1999)). Specifically, one's RFC reflects the *most* that an individual can still do, despite his or her limitations, and is used at steps four and five

to evaluate the claimant's case. 20 C.F.R. §§ 404.1520, 404.1545; SSR 96-8P, 1996 WL 374184 at *2. In crafting the RFC, the ALJ must consider all the evidence of record, including medical signs and laboratory findings, daily activities, medical source statements, and a claimant's medical history. SSR 96-8p, 1996 WL 374184, at *5; *see also Mullin v. Apfel*, 79 F. Supp. 2d 544, 548 (E.D. Pa. 2000). An ALJ's RFC findings, however, must be supported by medical evidence. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986). "[O]nce the ALJ has made this [RFC] determination, [a court's] review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence." *Black v. Berryhill*, No. 16-1768, 2018 WL 4189661 at *3 (M.D. Pa. Apr. 13, 2018).

In *Cotter v. Harris*, the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." 642 F.2d 700, 704, 706-707 (3d Cir. 1981). However, the ALJ need not undertake an exhaustive discussion of all the evidence. *See, e.g., Knepp*, 204 F.3d at 83. "There is no requirement that the ALJ discuss in her opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004). In making the RFC determination, "the ALJ must consider all evidence before him." *Burnett*, 220 F.3d at 121 (citations omitted); 20 C.F.R. § 404.1527(c); *see also Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) ("The Secretary must 'explicitly' weigh all relevant, probative and available evidence. . . . The Secretary may properly accept some parts of the medical evidence and

reject other parts, but she must consider all the evidence and give some reason for discounting the evidence she rejects.").

In making the RFC determination, "the ALJ must consider all evidence before him" and "evaluate every medical opinion . . . receive[d]." *Burnett*, 220 F.3d at 121 (citations omitted); 20 C.F.R. § 404.1527(c); *see also Adorno*, 40 F.3d at 48 ("The Secretary must 'explicitly' weigh all relevant, probative and available evidence . . . . The Secretary may properly accept some parts of the medical evidence and reject other parts, but she must consider all the evidence and give some reason for discounting the evidence she rejects."). The Social Security Regulations define "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including . . . symptoms, diagnosis, and prognosis, what [the claimant] can still do despite [his or her] impairment(s), and . . . physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). Social Security Ruling ("SSR") 96-5p further clarifies that "opinions from any medical source on issues reserved to the Commissioner must never be ignored," and specifically states that the ALJ's "decision must explain the consideration given to the treating source's opinion(s)."[2] SSR 96-5p, 1996 WL 374183, at *3, *6 (July 2, 1996).

As this matter involves a claim filed after March 27, 2017, the new regulatory framework governing the evaluation of medical opinions applies to the ALJ's evaluation of

---

[2] SSRs are agency rulings published under the authority of the Commissioner and are binding on all components of the Social Security Administration. 20 C.F.R. § 402.35(b)(1). SSRs do not have the force and effect of the law or regulations but are to be "relied upon as precedents in determining other cases where the facts are basically the same." *Heckler v. Edwards*, 465 U.S. 870, 873, n.3 (1984).

the medical opinions in the record. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132-01 (Mar. 27, 2017)); *see also* 82 Fed. Reg. 15263 (March 27, 2017); 82 Fed. Reg. 16869 (corrective notice) (explaining that SSR 96-2p and 96-5p do not apply to newly filed or pending claims after March 27, 2017). Under the new regulations, rather than assigning weight to medical opinions, the Commissioner will articulate "how persuasive" he or she finds the medical opinions. 20 C.F.R. § 404,1520c(b). The Commissioner's consideration of medical opinions is guided by the following factors: supportability; consistency; relationship with the claimant (including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship); specialization of the medical source; and any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1520c(c). The most important of these factors is the "supportability" of the opinion and the "consistency" of the opinion. 20 C.F.R. § 404.1520c(b)(2).

The ALJ must explain how he or she considered the "supportability" and "consistency" of a medical source's opinion. 20 C.F.R. § 404.1520c(b)(2). Generally, the ALJ may but is not required to, explain his or her consideration of the other factors, but if there are two equally persuasive medical opinions about the same issue that are not the same, then the ALJ must explain how he or she considered the other factors. 20 C.F.R. § 404.1520c(b)(3). To facilitate judicial review, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests" and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain

evidence. *Cotter*, 642 F.2d at 704, 706-707. An ALJ need not undertake an exhaustive discussion of all the evidence or "use particular language or adhere to a particular format in conducting his analysis." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004); *see Hur*, 94 F. App'x at 133 ("There is no requirement that the ALJ discuss in his opinion every tidbit of evidence included in the record."). However, an ALJ must ensure "sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505; *see, e.g.*, *Rivera v. Comm'r of Soc. Sec.*, 164 F. App'x 260, 262 (3d Cir. 2006) ("The only requirement is that reading the ALJ's decision as a whole, there must be sufficient development of the record and explanation of findings.").

Upon consideration of the record, the Court is persuaded by Shipman's arguments. To the extent Shipman argues that the ALJ improperly excluded the limitation to one- and two-step tasks without adequate support or explanation, the Court agrees. In *Podunajec v. Saul*, the Court found that an ALJ's failure to explain why a one- or two-step task limitation was omitted from the RFC assessment required a remand. No. 3:19-CV-01938, 2020 WL 7319779, at *6-7 (M.D. Pa. Dec. 11, 2020). In *Podunajec*, the ALJ gave great weight to one medical opinion which opined that the claimant could "understand, retain, and follow simple job instructions (i.e. perform/follow one and two step tasks/instructions)." 2020 WL 7319779, at *5 (internal quotations and citations omitted). However, the ALJ limited the claimant to "simple, routine tasks, but no complex tasks," without a limitation that the claimant would be limited specifically to one and two-step tasks. *Podunajec*, 2020 WL 7319779, at *4. The Court concluded that although the ALJ was not required to include this limitation despite giving great weight to the opinion, the ALJ was required to explain "her

basis for choosing to attribute a portion of Dr. Rohar's opinion while rejecting other portions of his opinion." *Podunajec*, 2020 WL 7319779, at \*6 (citations to record omitted).

Similarly, in *Simon*, the Court concluded that the ALJ was required to further address or explain the decision to omit the limitation to one- or two-step tasks where the ALJ found the medical source's opinion to be generally persuasive. 2022 WL 828935, at \*10. The Court stated:

> This limitation was a material aspect of the doctor's opinion and its unexplained absence from the RFC leaves an evidentiary void in this case. While the ALJ certainly was not required to include this limitation, the ALJ was required to explain the failure to include this limitation, particularly because the ALJ found this opinion to be generally persuasive and supported by the record.

*Simon*, 2022 WL 828935, at \*10.

In this case, the Court finds that the ALJ was required to further address or explain the decision to omit the limitation to one- or two-step tasks. *Simon*, 2022 WL 828935, at \*10. As noted above, the ALJ determined the Shipman has the RFC to perform light work with the following limitations: avoid unprotected heights; occasionally climb; tolerate occasional exposure to extreme cold temperatures, wetness, and vibration; capable of no more than occasional use of the bilateral lower extremities for the operation of foot controls and pedals; understand, retain, and carry out simple instructions with few workplace changes; occasional decision-making; avoid fast production-rate pace work; and should be afforded the opportunity to alternate between sitting and standing every 30 minutes. (Doc. 13-2, at 31). There are two medical opinion of record regarding Shipman's mental limitations. (Doc. 13-2, at 33-34).

- 17 -

First, State agency psychological consultant, Dr. Ostrich, completed a mental RFC assessment on July 24, 2017. (Doc. 13-3, at 10-12). Dr. Ostrich opined that Shipman has the following mental functioning limitations: moderate in understanding, remembering, and carrying out detailed instructions; moderate in maintaining attention and concentration for extended periods; moderate in performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances; moderate in completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods; and moderate in responding appropriately to changes in the work setting. (Doc. 13-3, at 10-11). Dr. Ostrich further opines that Shipman "is able to meet the basic mental demands to complete 1-2 step tasks on a sustained basis despite the limitations resulting from his impairment. [Shipman] can understand, retain, and follow simple instructions (i.e., perform/follow one and two step tasks/instructions)." (Doc. 13-3, at 11). Upon consideration, the ALJ found the opinion of Dr. Ostrich to be "persuasive." (Doc. 13-2, at 33). The ALJ explained that the opinions "is supported by and consistent with the medical evidence of record and activities of daily living previously discussed." (Doc. 13-2, at 33). The ALJ stated that "although [Shipman] has been diagnosed with depression, the evidence does not show any history of psychological treatment, aside from recent medication management with his primary care provider." (Doc. 13-2, at 34).

Second, consultative examiner, Dr. Betts, completed a mental status evaluation and medical source statement of ability to do work-related activities (mental) on July 12, 2017. (Doc. 13-10, at 226-34). Dr. Betts opined that Shipman has the following mental functioning

limitations: mild in understanding and remembering simple instructions; moderate in carrying out simple instructions; moderate in making judgments on simple work-related decisions; moderate in understanding and remembering complex instructions; moderate in interacting appropriately with the public, supervisor(s), and co-workers; moderate in responding appropriately to usual work situations and to changes in a routine work setting; marked in carrying out complex instruction; and marked in making judgments on complex work-related decisions. (Doc. 13-10, at 232-33). Upon consideration, the ALJ found the opinion of Dr. Betts to be "partially persuasive." (Doc. 13-2, at 34). The ALJ explained that "the limitations suggested herein appear to overestimate [Shipman]'s degree of limitation, in part." (Doc. 13-2, at 34). The ALJ stated that:

> [A]lthough the records clearly show that he has experienced some deficits, i.e. concentration/focus/memory limitations that would support a restriction to simple work, the records corroborate not all of the suggested limitations. For instance, [Shipman] was perceived as having moderate limitation in his ability to interact with others. The evidence, as [Shipman] indicated that he resided in an apartment with family members, belies this conclusion. He admitted that he is able to travel alone or with the accompaniment of others and that getting along with authority figures is not an issue for him. The medical evidence of record does not document any serious issues interacting with his treatment providers and he interacted appropriately at the hearing. Therefore, the record does not establish more than a mild limitation when interacting with others. Additionally, although Dr. Betts found impaired memory, [Shipman] also exhibited normal cognitive functioning and the record does not contain any formal mental health treatment; thus, the marked limitations are not supported in this regard. As such, because [Shipman]'s signs, symptoms, and residual ability is not fully consistent with the limitations suggested herein, this opinion is found to be only partially persuasive.

(Doc. 13-2, at 34).

While the ALJ certainly was not required to include a limitation to one- and two-step tasks, the ALJ was required to explain the failure to include this limitation, particularly

because the ALJ found this opinion to be generally persuasive and supported by the record. *Simon*, 2022 WL 828935, at *10; (Doc. 13-2, at 33).

Next, the Court finds that the ALJ's exclusion of a limitation to one- and two-step tasks without adequate support or explanation is not harmless error. In the *Dictionary of Occupational Titles* ("DOT"), the general educational development of each occupation is described. "General educational development embraces those aspect of education (formal and informal) which are required of the worker for satisfactory job performance. DOT, Appendix C, 1991 WL 688702. The GED scale is composed of three divisions, but only one is relevant here—reasoning development. DOT, Appendix C, 1991 WL 688702. In occupations with a reasoning development level of 1, satisfactory job performance requires that an employee be able to "[a]pply commonsense understanding to carry out simple one-or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." DOT, Appendix C, 1991 WL 688702. In occupations with a reasoning development level of 2, satisfactory job performance requires that an employee be able to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." DOT, Appendix C, 1991 WL 688702.

The plain language of the DOT definition for GED Reasoning Level 1 suggests there is no conflict between it and a limitation to no more than 1 or 2-step tasks. As explained in *Ferrebee v. Kijakazi*:

> Courts—including this one—have found that a limitation to one-to two-step tasks is consistent with GED Reasoning Development Level 1, but *inconsistent* with GED Reasoning Development Level 2. *See Stanton v. Comm'r, Soc. Sec. Admin.*, 899 F.3d 555, 560 (8th Cir. 2018); *Henderson v. Colvin*, 643 Fed. App'x

- 20 -

273, 277 (4th Cir. 2016) (per curiam); *Rounds v. Comm'r SSA*, 807 F.3d 996, 1003 (9th Cir. 2015); *Skeens v. Astrue*, 903 F. Supp. 2d 1200, 1210-11 (W.D. Wash. 2012); *Wiszowaty v. Astrue*, 861 F. Supp. 2d 924, 946 (N.D. Ind. 2012); *see also Shingler v. Kijakazi*, Civil Action No. 4:20-CV-01344, 2022 U.S. Dist. LEXIS 16307, 2022 WL 273426, at *12 (M.D. Pa. Jan. 28, 2022); *Brown v. Kijakazi*, Civil Action No. 4:20-CV-00836, 2021 U.S. Dist. LEXIS 195357, 2021 WL 4711242, at *7 n.4 (M.D. Pa. Oct. 8, 2021).

No. 3:20-CV-02188, 2022 WL 905153, at *4 (M.D. Pa. Mar. 28, 2022).

Courts have also noted that a GED Reasoning Level of 2 *may* conflict with a limitation to 1 or 2-step tasks, and typically remand where a there is a conflict involving a limitation to 1 or 2-step tasks and the only occupations cited by a VE and ALJ contain a GED reasoning level 2. *Ferrebee*, 2022 WL 905153, at *4.

In *Soto v. Kijakazi*, No. 4:21-CV-1531, 2022 WL 4358087, at *11 (M.D. Pa. Sept. 20, 2022), the Court concluded that the ALJ's failure to explain why the limitation to one and two-step tasks was not incorporated in the RFC was harmless because "even *if* the ALJ had included a limitation to 1 or 2-step tasks and relied on the same [vocational expert] testimony already in this record, the result of the ALJ's decision, would be the same." *Soto,* 2022 WL 4358087, at *11. The Court explained that the claimant would be still be able to perform at least one of the occupations cited by the vocational expert and adopted by the ALJ, cleaner (DOT #323.687-014), which has a GED reasoning level of 1. *Soto*, 2022 WL 4358087, at *11.

Here, the occupations cited by the vocational expert and adopted by the ALJ include: garment sorter; information clerk; ticket sales. (Doc. 13-2, at 36). Unlike *Soto*, none of these occupations have a GED Reasoning Level of 1. *See* 2022 WL 4358087, at *11. Rather, garment sorter has a GED Reasoning Level of 2, *see* DOT# 222.687-014, 1991 WL 672131, information clerk has a GED Reasoning Level of 4, *see* DOT# 237.367-018, 1991 WL 672187,

and ticket sales has a GED Reasoning Level of 3, *see* DOT# 211.467-030, 1991 WL 671853. Because the jobs identified by the vocational expert all have a GED Reasoning Level of 2, 3, and 4, the Court finds that remand is required to properly consider Shipman's limitation to one- and two-step tasks. If the ALJ had included a limitation to one or two-step tasks and relied on the same vocational expert testimony already in this record, the result of the ALJ's decision, would not be the same. *See Soto*, 2022 WL 4358087, at *11; *Ferrebee*, 2022 WL 905153, at *4. Thus, the Court concludes that the ALJ's decision, in this case, is not supported by substantial evidence.

Accordingly, the Court will remand this case to the Commissioner for further consideration of this evidence. *Simon*, 2022 WL 828935, at *10.

B.   The Court declines to address Shipman's remaining arguments.

Because the Court has vacated and remanded the decision of the Commissioner for further consideration, concluding that remand is required to properly consider Shipman's limitation to one- and two-step tasks, the Court declines to address Shipman's remaining argument. "A remand may produce different results on these claims, making discussion of them moot." *Burns v. Colvin*, 156 F.Supp.3d 579, 598 (M.D. Pa. Jan. 13, 2016). The Court's evaluation of Shipman's additional contentions would be futile given that the ALJ's reconsideration of whether Shipman's limitations may yield a different result.

V.   **Remedy**

As a final matter, the Court addresses whether this case should be remanded to the Commissioner for further administrative proceedings or whether reversal and an award of benefits is appropriate. The Court has authority to affirm, modify or reverse the

Commissioner's decision "with or without remanding the case for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100–01 (1991). However, the Third Circuit has advised that benefits should only be awarded where "the administrative record of the case has been fully developed and when substantial evidence in the record as a whole indicates that the claimant is disabled and entitled to benefits." *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000); *see e.g. Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."). Here, the appropriate measure is to remand for further consideration on the issue of whether Shipman is capable of performing work that exists in significant numbers in the national economy. The analysis on remand may impact, and thus include, further consideration of other issues raised by Shipman on this appeal. Upon remand, the ALJ is instructed to consider and make specific findings as to all relevant probative medical evidence.

VI. **CONCLUSION**

Based on the foregoing, the Commissioner's decision to deny Shipman's application for disability benefits is **VACATED**, and the case is **REMANDED** to the Commissioner to fully develop the record, conduct a new administrative hearing, and appropriately evaluate the evidence pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to **CLOSE** this case.

An appropriate Order follows.

Dated: August 29, 2023          *s/ Karoline Mehalchick*
                                        **KAROLINE MEHALCHICK**
                                        **Chief United States Magistrate Judge**